IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 26, 2021

**KRISTIN M. MYERS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Loudon County**
**No. 2010-CR-60     Jeffery Hill Wicks, Judge**

———————————————————

**No. E2020-01401-CCA-R3-PC**

———————————————————

The petitioner, Kristin M. Myers, appeals the denial of her post-conviction petition, arguing the post-conviction court erred in finding she received the effective assistance of counsel at trial. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER. and CAMILLE R. MCMULLEN, JJ., joined.

Gerald L. Gulley, Knoxville, Tennessee, for the appellant, Kristin M. Myers.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Russell Johnson, District Attorney General; and Robert C. Edwards, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

The defendant was indicted for the first-degree murder of her husband, Larry Myers. *State v. Kristin M. Myers*, No. E2012-00494-CCA-R3-CD, 2013 WL 1094981, at *1-5 (Tenn. Crim. App. Mar. 18, 2013), *perm. app. denied* (Tenn. July 10, 2013). Though the defendant, when questioned by police, confessed to fighting with the victim and firing at him, she claimed she did so in order to protect herself. *Id*. at *2. Specifically, the defendant told the investigating officers that

I heade[d] back to my truck to leave. As I got in, I saw him coming down the steps so I slammed the door and locked it. He rared [sic] back with his fist like he was going to try to break the window. So I rolled the window down about [three to four] inches and told him he better not bust my window. He started to reach in the window. I had my gun in the console, so I was leaning over to get away from him, I opened the console and got the gun and reached, well, kind of, stuck it out the window and he turned away and I pulled the trigger. I saw him kneel down as I pulled out of the driveway.

*Id.* When asked why she did not call the police, the defendant told officers that she was unsure if the victim was actually injured and that she believed the defendant had already called the police prior to being shot. *Id.* at *3.

The victim's cause of death was "an undetermined range, perforating gunshot wound of the chest." *Id.* at *4. The victim did not die immediately; rather, he bled to death, lingering for approximately twenty minutes after he was shot. *Id.* According to the medical examiner,

if the victim had received medical treatment during that twenty-minute period, he likely could have survived. Although alcohol was present in the victim's blood, the medical examiner, based on the difference in victim's "blood alcohol and vitreous alcohol levels[,]" believed that the victim "was on the way down the curve at" the time of the shooting, meaning that he had stopped drinking prior to the shooting.

*Id.*

At the conclusion of her trial, the jury found the defendant guilty of first-degree murder, and the trial court sentenced her to life imprisonment. *Id.* at *5.

Following the denial of her direct appeal, the petitioner filed a timely pro se petition for post-conviction relief. After the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, arguing, in part, trial counsel was ineffective in advising the petitioner not to accept a plea offer of twenty years at 85%. An evidentiary hearing was held on July 24, 2020, during which the petitioner and trial counsel testified. Although the petitioner asserted numerous claims in her petition and amended petition, we will summarize only the evidentiary hearing testimony relevant to her claim on appeal.

- 2 -

The petitioner testified trial counsel was appointed to represent her following her arrest. The petitioner and trial counsel met "maybe ten times," where they discussed "mostly the lack of evidence" in her case. Prior to trial, the petitioner was presented with three plea offers. The State first offered twenty years at 100%. However, because trial counsel indicated that subsequent offers would be more favorable, the petitioner rejected the initial offer. A few days prior to trial, trial counsel called and informed the petitioner that the State had extended an offer of fifteen years at 65%. An associate from trial counsel's firm met with the petitioner at the jail and wrote the terms of the plea offer on a piece of paper, which the petitioner signed. After the petitioner accepted the offer, trial counsel notified her that the victim's family had rejected the offer because they "wanted to see [the petitioner] do at least twenty years." Following the withdrawal of the second offer, trial counsel began "talking about [] twenty years at 85 percent." Trial counsel told the petitioner that "even if they convicted [her] of second-degree murder, they couldn't give [her] any more time than [twenty years]." Because trial counsel misled the petitioner as to what her potential punishment would be, she rejected the third plea offer and proceeded to trial. However, the petitioner testified, if she thought there was a realistic chance that she would be convicted of first-degree murder, she would have accepted the third offer.

Trial counsel testified he was appointed to represent the petitioner on her first-degree murder charge. At their initial meeting, trial counsel and the petitioner discussed the nature of the petitioner's charges and potential sentencing ranges. Because the petitioner disclosed that she and the victim had an abusive relationship, trial counsel requested funds to hire a private investigator to look deeper into the marriage. Trial counsel ultimately developed a defense strategy which aimed to show the victim's death resulted from "a culmination of a series of bad encounters between a husband and wife rather than a planned, premeditated act on the part of [the petitioner]." It was imperative that trial counsel dispel the notion that the petitioner planned the murder because trial counsel knew the State was in possession of incriminating text messages between the petitioner and victim on the night of the murder.

Regarding plea negotiations, the State first extended an offer of twenty years at 100%. Trial counsel did not advise the petitioner whether or not to accept the offer but told her to think about it. The petitioner ultimately decided that a twenty-year sentence was akin to a life sentence, and she informed trial counsel that she did not want to accept the offer. Closer to trial, when trial counsel was out of town, he received a phone call from the prosecutor, who extended an offer of fifteen years at 65%. Trial counsel asked an associate to meet with the petitioner and convey the offer. He also asked the associate to give the petitioner a written message in which he "encouraged [the petitioner] to strongly consider taking [the] offer." Although the petitioner accepted the offer, "almost simultaneously," the offer was withdrawn because the victim's family was "dead-set

against" it.  At the evidentiary hearing, trial counsel could not recall the State extending a third plea offer of twenty years at 85%.

At the conclusion of the hearing, post-conviction counsel argued the withdrawn plea offer was subject to contract law, and because there was an offer, an acceptance, and consideration, a valid contract existed.  Post-conviction counsel then requested that the post-conviction court "amend the pleadings to conform to the proof and ask[ed] that [the petitioner] be allowed . . . to be sentenced to [fifteen years at 65%]."

After its review of the evidence presented, the post-conviction court denied relief.  On October 14, 2020, this Court granted the petitioner's motion to late-file her notice of appeal.

*Analysis*

On appeal, the petitioner asserts trial counsel was ineffective for failing to "protect" the plea offer of fifteen years at 65%.  Specifically, the petitioner argues trial counsel failed to file a motion to enforce the agreement following the State's revocation.  Essentially, because the offer was governed by contract law, the petitioner insists the State was obligated to honor it, regardless of the wishes of the victim's family.  Although the petitioner asserts this issue was properly raised below, if found to be waived, she requests analysis under a plain error standard of review.  The State contends the petitioner has waived this issue, and even if the issue were not waived, the petitioner is not entitled to relief.

Initially, we must address the State's contention that the petitioner has waived the issue presented on appeal for failing to include it in her petition for post-conviction relief and for failing to raise it on direct appeal.  While the petitioner challenged other aspects of the plea negotiation process, she failed to challenge trial counsel's failure to file a motion to enforce the second plea offer in either her original or amended petitions for post-conviction relief.  Although post-conviction counsel discussed the plea offer in relation to contract law during the evidentiary hearing, it was not in the context of ineffective assistance of counsel, rather the petitioner raised it as a stand-alone claim under the theory that contract law applied.  Issues not raised in the post-conviction petition cannot be raised for the first time on appeal.  *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived.").  This issue is waived.

Moreover, the petitioner's challenge to the withdrawn plea offer based on contract law principles, as argued at the evidentiary hearing, could have been raised on direct appeal.  Under Tennessee Code Annotated section 40-30-106:

- 4 -

(g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

(1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

"[T]he petitioner is bound by the action or inaction of his attorney." *House*, 911 S.W.2d at 706. In its order denying post-conviction relief, the post-conviction court found

this issue could have been raised at the trial level and on the petitioner's direct appeal. However, the petitioner failed to do so and she offered no explanation as to why this issue was not previously raised. Therefore, this court finds that this issue has been waived and therefore, denied. Further, the court finds that the issue is not an appropriate ground for relief under the Post-Conviction Procedure Act.

Because the petitioner could have presented this issue as a stand-alone claim for our review on direct appeal but chose not to, it is waived.

Despite the petitioner's waiver of her claim, she asks this Court to review the issue under plain error. As a general rule, plain error review is available on appeal for a claim that is otherwise waived, *see* Tenn. R. App. P. 36(b), our supreme court concluded that a claim waived pursuant to the Post-Conviction Procedures Act precluded plain error review. *State v. West*, 19 S.W.3d 753, 756-57 (Tenn. 2000) (analyzing the issue under the repealed Act, but stating, "Our holding here, . . . though applying to [the repealed] Act, applies equally to proceedings brought under the Post-Conviction Procedure Act currently in force."). The Code's limitation of post-conviction relief to "claims for relief [that] have not been waived or previously determined," Tenn. Code Ann. § 40-30-106(f), shields issues raised for the first time on appeal from plain error review, *see West*, 19 S.W.3d at 756. Although *West* analyzed the application of the plain error doctrine in post-conviction proceedings under the former Post-Conviction Procedure Act, repealed in 1995, this Court has applied the ruling in *West* to cases brought under the current Act. *See Alfio Orlando Lewis v. State*, No. M2004-01282-CCA-R3-PC, 2005 WL 639138, at *5 (Tenn. Crim. App. Mar. 16, 2005) ("The plain error doctrine has no application in post-conviction relief

proceedings."). Therefore, plain error review is unavailable to the petitioner in the present appeal. *See West*, 19 S.W.3d at 756-57.

## *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE